# United States Court of Appeals
## For the First Circuit

No. 07-2354

ANTHONY SULLIVAN, on behalf of himself
and all others similarly situated,

Plaintiff, Appellant,

v.

GREENWOOD CREDIT UNION, JOHN DOES 1-5,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lynch, Circuit Judge,
Tashima,* Senior Circuit Judge,
and Lipez, Circuit Judge.

Christopher Lefebvre with whom Claude Lefebvre &
Christopher Lefebvre, P.C., Scott C. Borison, and Legg Law Firm,
LLC were on brief for appellant.
Harvey Weiner with whom Jill M. Brannelly and Peabody &
Arnold LLP were on brief for appellee.

March 19, 2008

---

* Of the Ninth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**.    This putative class action challenges the legality, under the Fair Credit Reporting Act ("FCRA" or "the Act"), 15 U.S.C. § 1681 et seq., of an unsolicited letter to a consumer about the offering of credit for a home loan. Defendant Greenwood Credit Union sent the letter to plaintiff, Anthony Sullivan, and others based on a list of individuals meeting certain minimal credit requirements that Greenwood had purchased from a credit reporting agency, a process called pre-screening. This unsolicited letter to Sullivan and others triggered the requirements of the FCRA, which permits the unconsented-to use of credit information only for specific purposes, one of which is the extending of a "firm offer of credit" as defined by the Act.    If Greenwood has willfully used credit information for an unpermitted purpose, Greenwood would have to pay actual damages or a statutory penalty between $100 and $1,000 per person.    This case is about plaintiff's efforts to collect that statutory penalty for a class of consumers; there is no claim Sullivan was wrongfully denied credit.

This case does not involve a claim that the letter was a sham and merely a marketing device for a consumer purchase.    There is also no claim that Greenwood would have used the same criteria by which it selected Sullivan to receive the letter to deny him credit.    Rather, the plaintiff's argument is that the letter was based on such minimal criteria and the actual extension of credit

-2-

was so contingent on other conditions that the letter could not be a firm offer of credit.

After allowing some discovery, the district court granted summary judgment to the defendant, finding that Greenwood's letter to the proposed plaintiff class constituted a "firm offer of credit" as that term is defined by the FCRA. Construction of the FCRA's term "firm offer of credit" is a matter of first impression for this circuit. We affirm.

## I.

In 2006, Greenwood purchased from TransUnion Credit Bureau a list of names and addresses of homeowners who met certain financial criteria, including having at least $10,000 in revolving debt and a credit score of 500 or greater.[1] The plaintiff met those criteria and was on this list. Greenwood obtained only a consumer report containing contact information; it did not receive any homeowner's full credit report nor any homeowner's particular credit score.[2]

---

[1] The Act defines a "credit score" as "a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default." 15 U.S.C. § 1681g(f)(2)(A). A higher credit score translates to higher creditworthiness.

[2] Although the contact information Greenwood received contained no actual credit information, it nonetheless qualifies as a "consumer report" for the purposes of the FCRA, thus triggering the FCRA's requirements. 15 U.S.C. § 1681a(d).

Greenwood used this list to send unsolicited copies of a form letter to each of the pre-qualified homeowners, including Sullivan.  The body of the letter stated, among other things, that:

> Because of your excellent credit, you have been pre-approved** for a home loan, up to 100% of the value of your home. . . .
>
> . . . .
>
> If you have not yet taken advantage of some of the lowest rates in decades, you still have time to secure a great program by contacting one of our knowledgeable mortgage originators today!  This is your opportunity for a no cost, no obligation telephone consultation . . . !
>
> ** Limited time offer to customers who qualify based on equity, income, debts, and satisfactory credit. Rates and terms subject to change without notice. Most loan programs require both a satisfactory property appraisal and title exam for final approval. . . . If at time of offer you no longer meet initial criteria, offer may be revoked.

In addition, the letter contained the following italicized notices in a different typeface from the rest of the letter:

> *You can choose to stop receiving "prescreened" offers of credit from this and other companies by calling toll-free [telephone number].  See* PRESCREEN & OPT-OUT NOTICE *on the other side for more information about prescreened offers.*
>
> . . . .
>
> PRESCREEN & OPT OUT NOTICE — *This "prescreened" offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria including providing acceptable property as*

-4-

collateral. If you do not want to receive prescreened offers of credit from this and other companies, call TransUnion at . . . or visit the website . . .; or write . . . .

The letter did not contain specific loan terms, such as an interest rate or the duration of the loan.

Sullivan had never consented to the disclosure of any of his credit information to Greenwood. Upon receiving the letter, Sullivan made no attempt to respond to the letter or contact Greenwood.

Instead, on August 8, 2006, Sullivan filed a putative class action, on behalf of a class of the approximately two million consumers who received the letter, in federal district court in Massachusetts, alleging that Greenwood was in violation of the FCRA. Sullivan argues that because he never consented to the disclosure of his credit information to Greenwood, Greenwood could only legally have obtained information that he met the pre-screening criteria if it was for the purpose of granting a "firm offer of credit." He contends that the letter he received is not a "firm offer of credit" because it "is lacking crucial terms for it to be an offer" and "is so vague and lacking in terms as not to constitute an 'offer capable of acceptance'." He seeks statutory damages of $1,000 per person in the class, punitive damages, and attorneys' fees and expenses. See 15 U.S.C. § 1681n(a).

The district court allowed the plaintiff limited discovery. The plaintiff moved for class certification and, after

-5-

discovery concluded, the defendant moved for summary judgment. On August 13, 2007, the district court granted summary judgment to the defendant, holding that Greenwood's letter constituted a "firm offer of credit" under the FCRA. It dismissed the class certification motion as moot. This appeal followed.

## II.

We review the district court's entry of summary judgment de novo. Mellen v. Trs. of Boston Univ., 504 F.3d 21, 24 (1st Cir. 2007). There are no material disputes of fact; the issues are ones of law.

A.    The Role of the FCRA Within the Consumer Credit Protection Act's Statutory Scheme

The Consumer Credit Protection Act, Chapter 41 of Title 15, U.S.C., initially enacted in 1968, is a comprehensive consumer protection statute that accomplishes its purpose through a number of subchapters, each of which regulates a different aspect of or actor in the credit industry.[3] The FCRA is only one of these subchapters.

Subchapter I of the Consumer Credit Protection Act is the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., which

---

[3] "[T]he Consumer Credit Protection Act is a comprehensive statute designed to protect consumers by requiring full disclosure of financial terms in most credit transactions, making unlawful the use of certain unethical practices in the garnishment of wages and debt collection, regulating the transfer of funds by electronic means, and prohibiting discrimination in credit transactions." Brothers v. First Leasing, 724 F.2d 789, 791 (9th Cir. 1984).

imposes disclosure requirements on creditors. Subchapter II places restrictions on garnishment of compensation, 15 U.S.C. § 1671 et seq. Subchapter II-A is the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq., which protects consumers from unfair trade practices by credit repair organizations. Subchapter III is the FCRA, 15 U.S.C. § 1681 et seq., which primarily regulates credit reporting agencies but also places requirements on users of credit information from these agencies. Subchapter IV is the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., which prohibits discrimination in the extension of credit. Subchapter V is the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Subchapter VI is the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., which regulates the participants in electronic fund transfer systems. We turn to certain of the subchapters.

1.    The Fair Credit Reporting Act

Congress enacted the FCRA in 1970 as part of the Consumer Credit Protection Act "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201, 2205 (2007); see TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001); see also 15 U.S.C. § 1681. Congress adopted a variety of measures designed to ensure that credit reporting agencies report only appropriate information. Some measures are imposed on agencies directly, others on users of credit information, such as Greenwood.

As to users of credit information, the Act sets out a statutory scheme which, among other things, allows the purchase of various forms of information compiled in consumers' credit reports from consumer credit reporting agencies for certain specified business purposes. 15 U.S.C. § 1681b. One of these purposes is to extend credit or insurance to a consumer. Id. § 1681b(a)(3)(A), (a)(3)(C).

In 1996, Congress amended the FCRA to allow creditors or insurers to purchase pre-screened lists of names and addresses of consumers who met certain criteria without each consumer's consent as long as they plan to extend to the consumer a "firm offer of credit or insurance." Id. § 1681b(c)(1); Pub. L. No. 104-208, § 2404, 110 Stat. 3009, 3009-430 (1996). That provision is at issue in this case. Once a creditor planning to extend firm offers of credit provides a consumer reporting agency with a set of financial criteria, the consumer reporting agency can provide the creditor the contact information, and no more, for consumers who meet those criteria. See 15 U.S.C. § 1681b(c). As a result, the purported extender of credit, here Greenwood, does not receive any consumer's full credit report. Greenwood cannot receive the full credit report without the consumer's permission. Here, Greenwood never received the full credit report.

In addition, the Act imposes disclosure requirements on creditors who use pre-screened lists. Id. § 1681m. There is no

claim Greenwood failed to comply with these disclosure requirements.

The Act provides a private right of action and imposes civil liability on users of credit information and consumer reporting agencies for noncompliance with the requirements of the Act, so long as the person acted willfully, id. § 1681n(a), knowingly, id. § 1681n(b), or negligently, id. § 1681o. In the case of a corporation that willfully fails to comply with any requirement of the Act, a court has discretion to award actual damages or statutory damages between $100 and $1,000 per consumer, in addition to punitive damages and attorneys' fees. See id. § 1681n(a).

## 2. The Truth in Lending Act

This case is not brought under TILA and there is no claim that Greenwood violated TILA. We discuss TILA to put into context the limited purposes of the FCRA.

Congress focused on creditors, not credit reporting agencies, when it enacted the TILA in 1968 to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit," which would enhance "economic stabilization . . . and the competition among the various financial institutions." 15 U.S.C. § 1601(a); see also Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 53-54 (2004). "The Act requires a

creditor to disclose information relating to such things as finance charges, annual percentage rates of interest, and borrowers' rights, see [15 U.S.C.] §§ 1631-1632, 1635, 1637-1639, and it prescribes civil liability for any creditor who fails to do so, see [15 U.S.C.] § 1640." Koons, 543 U.S. at 54. TILA's remedial scheme provides a right of action for both individual and class plaintiffs. See 15 U.S.C. § 1640. If a creditor violates TILA's requirements, a consumer is entitled to the sum of actual damages and statutory damages. The sum varies based on whether the action was maintained on a class or an individual basis and the type of credit transaction involved. See id. Unlike the FCRA, there is no scienter requirement for creditor liability. See id. § 1640(c).

Pertinent to our case, the TILA's requirement of disclosure of specific credit terms kicks in at a point in the credit transaction subsequent to a FCRA firm offer of credit. That is, TILA applies "at the time an application is provided to the consumer" for home equity loans, 12 C.F.R. § 226.5b(b), or "before consummation of the transaction" for mortgages, id. § 226.17(b). See Soroka v. JP Morgan Chase & Co., 500 F. Supp. 2d 217, 222 (S.D.N.Y. 2007). Before then, the firm offer of credit is governed by the FCRA disclosure requirements. Here, Sullivan made no further communication after the FCRA firm offer, so the TILA is not implicated.

B.        Was Greenwood's Letter a "Firm Offer of Credit"?

Sullivan brings his action under the FCRA.  He may prevail only if he establishes that the letter he received was not a "firm offer of credit" under the FCRA.

Each side relies on a canon of statutory interpretation to support its argument.  The plaintiff invokes the Supreme Court's use of "the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way," in its recent Safeco decision.  127 S. Ct. at 2209.  The Court used this canon to interpret the term "willfully" in the FCRA, 15 U.S.C. § 1681(n)(a), when the statute did not otherwise define the term. Id.  Sullivan argues that the common law meaning of the term "firm offer of credit" would require the disclosure of specific credit terms to the plaintiff.

The defendant rightly points out, however, that the term "firm offer of credit" is not subject to that canon because the term is explicitly defined in the FCRA.  The statutory definition imposes no requirement that a "firm offer of credit" must provide terms for credit such as interest rate and duration.  Invoking the canon of expressio unius est exclusio alterius, Greenwood argues that if Congress had wanted to require that more specific credit terms be included in a "firm offer of credit," it would have said so.

Plaintiff replies that the statutory definition only applies to the term "firm" and that we should resort to the common law to define what is an "offer" of credit.  He points out that the statute states: "The term '<u>firm offer</u> of credit or insurance' means <u>any offer</u> of credit or insurance to a consumer <u>that will be honored</u> . . . ."  15 U.S.C. § 1681a(<u>l</u>) (emphasis added).  He concludes that the term "offer" still has independent meaning, undefined by the statute.  We disagree.

We start with the language of the statute and its grammar.  Congress chose in its definition to put into quotes for the term it was defining "firm offer of credit or insurance," and not just "firm."

Next, we look to the more complete language iof the statute, and conclude plaintiff's reading is inconsistent with the rest of the statute.  The Act defines a "firm offer of credit or insurance" as:

> any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:
>
>> (1) The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established--

(A) before selection of the consumer for the offer; and
(B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.

(2) Verification
(A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer; or
(B) of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability.

(3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was--
(A) established before selection of the consumer for the offer of credit or insurance; and
(B) disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. § 1681a(l).

Under this language, an offer of credit meets the statutory definition so long as the creditor will not deny credit to the consumer if the consumer meets the creditor's pre-selection criteria. The term "firm offer of credit" does not require the offeror include additional terms other than the pre-selection criteria. As one court has colloquially put it, "a firm offer of

-13-

credit under the Act really means 'a firm offer if you meet certain criteria.'"  Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833, 841 (5th Cir. 2004).

The statutory scheme imposes disclosure requirements on a "firm offer of credit" in a variety of ways.  The creditor must disclose that "information contained in the consumer's consumer report was used," 15 U.S.C. § 1681m(d)(1)(A).  It requires disclosure that the consumer received the offer because he satisfied the criteria used to select the customer for the offer, id. § 1681m(d)(1)(B), but does not purport to require the creditor to include more criteria than used here.  And the statute requires disclosure that the offer can be conditioned on collateral or other pre-determined criteria, id. § 1681m(d)(1)(c), that the consumer has the right to opt out of pre-screened offers, id. § 1681m(d)(1)(d), and of how the consumer can exercise that right, id. § 1681m(d)(1)(e).

Further, the statute contemplates that there will be subsequent stages of communications beyond the "firm offer of credit," if the consumer is interested, during which additional terms will be offered.  The statute expressly provides that "the [firm] offer may be conditioned on one or more of the following . . . ."  In 15 U.S.C. § 1681a(l)(1), the statute refers to information which the customer will later supply in an "application for credit."  It also refers to a later decision to "extend

-14-

credit." Id. Thus, the statute is clear that the fact that the initial letter to the consumer does not yet resolve those additional conditions does not mean the letter fails to be a firm offer of credit.

The Fifth Circuit's decision in Kennedy, 369 F.3d 833, provides an example. Kennedy involved a situation in which two consumers' joint application for a credit card was rejected after they had received a letter from a bank stating that they were pre-approved for a credit card account. Id. at 837. The court nonetheless found that the letter met the statutory definition of a "firm offer of credit," and that the rejection was proper because the consumers could not meet the bank's additional pre-determined creditworthiness criteria. Id. at 841-42. The plaintiff's preferred definition is inconsistent with the Fifth Circuit's approach. We have found no circuit precedent which reads the statute as plaintiff does.

The plaintiff reads a Seventh Circuit case, Cole v. U.S. Capital, 389 F.3d 719 (7th Cir. 2004), to support his interpretation of "firm offer of credit." We disagree. In that case, that court found a mailing not to constitute a firm offer of credit when the mailing purportedly offered a $300 credit line towards the purchase of an automobile but did not include specific credit terms. The court held that "the offer was a sham made to justify access to the consumer credit reports," and because it "was

-15-

a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit." Id. at 728.

The problem before us is different from the problem in Cole. As the Seventh Circuit clarified in a later case, "Cole's objective was to separate bona fide offers of credit from advertisements for products and services, determining from 'all the material conditions that comprise the credit product in question . . . [whether it] was a guise for solicitation rather than a legitimate credit product.'" Murray v. GMAC Mortgage Corp., 434 F.3d 948, 955-56 (7th Cir. 2006) (quoting Cole, 389 F.3d at 728) (alteration in original). The purpose of the Cole mailing was "to identify potential auto buyers," id. at 955, and so the issue in Cole was whether the mailing was a "firm offer of credit," as opposed to a "firm offer of credit," see id. See also Dixon v. Shamrock Fin. Corp., 482 F. Supp. 2d 172, 177 (D. Mass. 2007) (noting that in Cole "the 'offer of credit' was in fact a sales pitch for a car dealership"). The problem here is not whether this is a bona fide offer of credit.

The problem here is also not a bait-and-switch problem. In other statutes, such as the TILA, Congress mandated truth in the descriptions of other credit terms. There is no claim here of untruthful disclosures.

Plaintiff argues that Congress intended for individuals whose private credit information is accessed in any form by a creditor to be given something of value in the exchange. The "value" of the offer made by Greenwood, plaintiff argues, is zero, and so the congressional intent is thwarted. Even if that were the intent, and it were permissible to substitute assumptions about intent for the plain language of the statute, we disagree that the value of the letter to the consumer is zero.

There was some value in the letter. Greenwood's letter informed the plaintiff that, based on certain credit information, he had been pre-selected as meeting certain eligibility requirements for the extension of credit. The letter informed him that if he were interested he could contact Greenwood and determine, based on other information, whether he would meet certain conditions. The letter did not guarantee him a loan, but did guarantee that he would not be disqualified from a loan on the basis of the pre-selection criteria. In turn, there was little invasion of consumer privacy. Greenwood never received his full credit report. It received only the plaintiff's contact information and that he met certain pre-selection criteria. This is a minimal invasion of privacy, offset by the value of the information in the letter to the plaintiff.[4]

---

[4] Because we conclude that Greenwood's offer was a firm offer of credit and did not violate the FCRA, we do not reach the issue of whether Greenwood acted "willfully," as that term is used

We affirm the entry of judgment for defendant.

---

in the Act, 15 U.S.C. § 1681n(a).