# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No.  07-2988

_____

Clayton R. Poehl, individually and on    *
behalf of all others similarly situated,    *
   *
           Plaintiff – Appellant,    *
   *
       v.    *
   *
Countrywide Home Loans, Inc.,    *
   *
           Defendant – Appellee.    *


_____

No.  07-3249

_____

Diane C. Ludditt-Poehl, individually    *
and on behalf of all others similarly    *
situated,    *
   *
           Plaintiff – Appellant,    *
   *
       v.    *
   *
Capital One Auto Finance, Inc.,    *
   *
           Defendant – Appellee.    *

Appeals from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted:  April 18, 2008
Filed:  June 19, 2008

_____

Before MURPHY, COLLOTON, and SHEPHERD Circuit Judges.
_____

MURPHY, Circuit Judge.

In these consolidated appeals, arising under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et. seq., Clayton R. Poehl and Diane C. Ludditt-Poehl appeal from adverse judgments on the pleadings granted by two district court judges in favor of Countrywide Home Loans, Inc.[1] and Capital One Auto Finance, Inc.[2] Appellants Poehl and Ludditt-Poehl claim that their credit reports were accessed by appellees in violation of FCRA and that the district courts erred in their rulings. We affirm.

I.

Appellants both received flyers in the mail. Poehl received two mailers from Countrywide stating that he had been preapproved for a loan of up to 90% of the value of his home with a minimum loan amount of $50,000. Ludditt-Poehl received a mailer from Capital One informing her than she had been preapproved for an auto financing loan with a maximum amount of $30,000 and a minimum of $10,000. These mailers implicated FCRA which only permits the use of an individual's credit information without his consent for certain purposes, one of which is the extension of a "firm offer of credit."

Poehl's first mailer, dated June 2005, states on the front side "You're already pre-approved for a refinance loan from Full Spectrum® Lending!" and includes

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

[2]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

additional loan details on the reverse, including "Minimum loan amount $50,000 in all states except Michigan, $10,000 min. in Michigan." It also sets forth restrictions and conditions on the loan:

> This offer is based on information obtained from a credit bureau. You received this offer because you met the criteria at the time this information was obtained. Your loan amount and terms may vary, or the offer may be withdrawn, if you no longer meet the credit, income, debt, and property value criteria. Loans are available for up to 90% loan-to-value ratio. Property value is established by an appraisal. A security interest will be taken on your home. You may opt-out of the credit repository prescreening process by contacting: [various credit reporting agencies].

The mailer further states that "On-time payments may result in a reduction in interest rate during the first four years of the 15 or 30 year loan. Restrictions apply. Ask for details." No specific information regarding the terms, duration, or interest rate of the loan was provided.

Poehl received the second mailer in January 2006. It states in relevant part: "Congratulations! You've been pre-approved for a refinance loan from Countrywide Home Loans' Full Spectrum® Lending Division for up to 90% of the value of your home!" and "Simply make all your payments on time, and your rate will drop each year for the first four years – by as much as 1.5%." At the bottom of the front side the mailer states "See PRESCREEN & OPT-OUT NOTICE on the other side of the loan summary page for details." The reverse side sets forth additional loan information and identical restrictions and conditions as contained in the June 2005 mailer. This mailer also did not contain specific loan information.

In April 2006 Ludditt-Poehl received a mailer from Capital One informing her that she was "already PRE-APPROVED for auto financing of up to $30,000 through Capital One Auto Finance® – with no money down!" A notation at the bottom of the

front page says "See PRESCREEN & OPT-OUT NOTICE on reverse under Important Information for more information about prescreened offers." The prescreened notice states "This 'pre-screened' offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria, including providing acceptable property as collateral." The mailer also stated that the minimum loan amount was $10,000. The mailer did not set forth the terms, duration, or interest rate of the loan.

Neither Poehl nor Ludditt-Poehl consented to the disclosure of their credit information to Countrywide or Capital One. Neither responded to their respective mailers. Each filed a putative class action. Poehl alleged that Countrywide violated FCRA by obtaining information from his credit report without his consent in order to prescreen him for eligibility to receive a home loan.[3] Ludditt-Poehl made a similar claim against Capital One. The defendants in both cases moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that the mailers were firm offers of credit so access of the Poehl and Ludditt-Poehl credit reports was permissible under FCRA. The district courts granted both motions on the ground that the mailers offered "some value" to the recipient that was more than nominal and were therefore firm offers of credit under FCRA.[4]

On their appeals Poehl and Ludditt-Poehl argue that the district court used an improper test for determining whether the mailers were firm offers of credit. Appellants contend that the "some value" test is but one of three factors that must be

---

[3]Poehl also sued Homeowners Loan Corp. and Ocean Bank, FSB alleging violations of FCRA. The district court dismissed Poehl's claim against Homeowners and transferred his claim against Ocean Bank to the Northern District of Illinois for inclusion in multidistrict litigation proceedings.

[4]The district court also granted Countrywide's request for entry of a separate final judgment pursuant to Rule 54(b) since his claim against Ocean Bank had not been resolved but transferred. The court also denied Poehl's motion belatedly attempting to certify a class as moot.

met. They say the mailer must also be an "offer" and be "firm," as those terms are defined under the common law. Appellants argue that since the prescreened mailers from Countrywide and Capital One do not satisfy these factors, they are not firm offers of credit and appellees violated FCRA by accessing their credit reports without consent. Because we find that the mailers met the requirements of firm offers of credit as that term is defined under the statute, we affirm.

## II.

We review a district court's grant of judgment on the pleadings de novo. Williams v. Bradshaw, 459 F.3d 846, 848 (8th Cir. 2006). A grant of judgment on the pleadings is appropriate "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002). We view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. Syverson v. FirePond, Inc., 383 F.3d 745, 749 (8th Cir. 2004).

## A.

Congress enacted the Consumer Credit Protection Act (CCPA) in 1968 to provide comprehensive protection of consumers in various aspects of financial dealings. CCPA has several subchapters each of which regulates an aspect of the credit industry. See Sullivan v. Greenwood Credit Union, 520 F.3d 70, 73 (1st Cir. 2008); Brothers v. First Leasing, 724 F.2d 789, 791 (9th Cir. 1984). One of these subchapters – FCRA – was enacted in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201, 2205 (2007); see also 15 U.S.C. § 1681. FCRA has several mechanisms to protect consumer credit information, some of which apply to credit reporting agencies while others apply to users of the information provided by those agencies, such as Countrywide and Capital One. Section 1681b outlines the permissible uses of consumer credit reports, one of which

is to extend credit to a consumer.  See 15 U.S.C. § 1681b(a)(3)(A); Sullivan, 520 F.3d at 73.

Congress amended FCRA in 1996 to permit creditors to purchase prescreened lists of consumers who meet the creditor's specific criteria without the consumers' consent as long as the purchaser intends to give the consumer a "firm offer of credit." § 1681b(c)(1)(B)(i).  Creditors interested in extending firm offers of credit provide the credit reporting agency with their credit specifications and the agency generates a list of consumers who meet that criteria based on information contained in their credit reports.  See § 1681b(c).  This method prevents creditors from accessing a consumer's full credit report, which cannot be disclosed without the consumer's consent.

FCRA also requires that firm offers of credit sent to consumers contain certain disclosures.  For example, the creditor must notify the consumer that information from the consumer's credit report was used, 15 U.S.C. § 1681m(d)(1)(A), that the offer was extended because the consumer met the creditor's selection criteria, § 1681m(d)(1)(B), and that the offer may be conditioned on meeting credit worthiness  criteria or continuing to meet selection criteria, or on furnishing collateral, § 1681m(d)(1)(C). Creditors must also inform the consumer that he can opt out of prescreened offers, § 1681m(d)(1)(D), and provide information as to how to do so, § 1681m(d)(1)(E). Appellants do not claim that appellees failed to comply with these requirements.

FCRA provides for a private right of action if a creditor willingly, knowingly, or recklessly violated its provisions.  See § 1681n; Safeco, 127 S. Ct. at 2208–10 (willful failure to comply with FCRA's mandates includes reckless failure); see also § 1681o (private right of action for negligent failure).  For a corporation that willfully fails to comply with FCRA's mandates the Act provides that the court may award either actual damages or statutory damages which range from $100 to $1000 per consumer, as well as punitive damages, costs, and attorney fees.  See § 1681n(a).

B.

Appellants argue that the mailer must be an "offer" and "firm" as those terms are defined under the common law in addition to meeting the "some value" test relied on by the district court. They contend that the mailers at issue fail to satisfy these requirements and are thus not firm offers of credit for which their credit information could permissibly be accessed by Countrywide and Capital One.

Appellants contend first that the mailers do not satisfy the common law definition of an "offer" as used in the statutory definition of "firm offer of credit" because they do not set forth the loan terms in sufficient detail such that the terms are clear to all parties and can be immediately accepted by the recipient. See 15 U.S.C. § 1681a(l) ("The term 'firm offer of credit or insurance' means any <u>offer</u> of credit or insurance to a consumer that will be honored . . . .") (emphasis added). To support this argument appellants cite to a recent Supreme Court decision for the proposition that terms used in FCRA retain their common law meanings. <u>Safeco</u>, 127 S. Ct. at 2208–10 (deriving the meaning of "willfully" from the common law to interpret a FCRA provision).

We find appellants' reliance on <u>Safeco</u> for this purpose misplaced. In <u>Safeco</u> the Court interpreted the phrase "willfully fails to comply" as used in § 1681n(a) in the absence of a statutory definition of "willfully." <u>See</u> 127 S. Ct. at 2209 ("[T]he general rule [is] that a common law term in a statute comes with a common law meaning, <u>absent anything pointing another way</u>.") (emphasis added). In this case the statutory definition of "firm offer of credit" precludes reliance on common law definitions. <u>See Dixon v. Shamrock Fin. Corp.</u>, 522 F.3d 76, 79–80 (1st Cir. 2008); <u>Sullivan</u>, 520 F.3d at 75–76. Congress codified a definition of "firm offer of credit" and tailored it to serve the purposes of FCRA:

> The term "firm offer of credit or insurance" means <u>any offer of credit or insurance to a consumer that will be honored</u> if the consumer is

-7-

determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, <u>except that the offer may be further conditioned on one or more of the following</u>: [three types of permissible conditions].

§ 1681a(l) (emphasis added). Under this language a credit offer "meets the statutory definition so long as the creditor will not deny credit to the consumer if the consumer meets the creditor's pre-selection criteria." <u>Sullivan</u>, 520 F.3d at 76; <u>see also</u> <u>Kennedy v. Chase Manhattan Bank USA, NA</u>, 369 F.3d 833, 841 (5th Cir. 2004) (a firm offer of credit "really means 'a firm offer if you meet certain criteria.'").

The language within the definition confirms this interpretation. <u>See</u> <u>Dixon</u>, 522 F.3d at 80–81; <u>Sullivan</u>, 520 F.3d at 76. The statutory definition contemplates additional communication between the creditor and the consumer that prevents an immediate acceptance of the offer. <u>See</u> § 1681a(l). The definition provides that the firm offer of credit can be conditioned on the consumer meeting additional specific creditworthiness criteria "for the purpose of determining whether to extend credit . . . pursuant to the offer," on verification that the consumer continues to meet the prescreen criteria and that information in the consumer's credit application meets the specific criteria for creditworthiness, and on the furnishment of collateral if required. <u>Id</u>. Because FCRA "specifically permits lenders to impose post-offer criteria that would be antithetical to the common law understanding of an 'offer' as an immediately-acceptable set of terms," reliance on common law notions of an "offer" within the statutory definition is misplaced in this statutory scheme. <u>Dixon</u>, 522 F.3d at 80. The mailers here satisfy the statutory requirements and are thus firm offers of credit.

Appellants also assert that the lack of material loan terms requires that we find that the mailers were not firm offers of credit. None of the mailers at issue mentioned interest rates, loan duration, or costs and fees associated with the loans, and the included information provided only a general range of loan amounts. FCRA does not,

however, require that the creditor include terms "other than the pre-selection criteria." Sullivan, 520 F.3d at 76; Dixon, 522 F.3d at 81 ("Congress's choice to omit from the FCRA any requirement for the inclusion of loan terms is properly interpreted to mean that Congress did not intend to require any such terms."). Moreover, a different subchapter of the CCPA, the Truth in Lending Act (TILA), regulates the disclosure of loan terms. See 15 U.S.C. § 1601 et. seq. TILA's extensive disclosure requirements and FCRA's paucity of them suggest that Congress intended for TILA to govern this aspect of the credit industry and that extensive disclosures are not required under FCRA. See Dixon, 522 F.3d at 81; Sullivan, 520 F.3d at 74–75. The lack of specific loan terms does not render the mailers not firm offers of credit.

Finally, appellants contend that the district court reliance on Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), was misplaced. We agree, but for reasons other than those argued by the appellants. In the absence of guidance from this court, the district court adopted a test from Cole to ascertain whether the mailers at issue were firm offers of credit.[5] In Cole the Seventh Circuit decided that a mailer offering a $300 automobile loan was "a guise for solicitation rather than a legitimate credit product" and thus was not a firm offer of credit because it lacked value to the consumer.[6] Id. at 728. Relying on Cole, the district court in these cases found that a firm offer of credit must have "some value" that is more than nominal and that the mailers at issue met that standard. The Seventh Circuit has meanwhile limited the scope of Cole; as Chief Judge Easterbrook explained the court's task in that case was "how to disentangle an offer of merchandise from an offer of credit when they are

---

[5]The Poehl court issued its ruling on August 7, 2007 adopting the "some value" analysis from Cole; the Ludditt-Poehl court relied on the Poehl analysis shortly thereafter.

[6]While the Cole mailer included other offers, such as a $2000 limit credit card and up to $19,500 in auto financing, approval of those offers was not guaranteed. The court thus examined only whether the $300 credit offer had value. See Cole, 389 F.3d at 726–28.

made jointly." Murray v. New Cingular Wireless Servs., Inc., 523 F.3d 719, 722 (7th Cir. 2008); see also Murray v. GMAC Mortgage Corp., 434 F.3d 948, 955–56 (7th Cir. 2006) ("Cole's objective was to separate bona fide offers of credit from advertisements for products and services . . . [to determine whether it] 'was a guise for solicitation rather than a legitimate credit product.'"), quoting Cole, 389 F.3d at 728.

Our case is different in that appellants do not allege that the mailers here were anything but pure offers of credit for which "Cole is beside the point." Murray, 523 F.3d at 722. The Seventh Circuit has rejected the application of Cole to pure offers of credit, concluding that § 1681b(c)(1)(B)(i) does not require that the firm offer of credit be "valuable" but rather that it be "firm." See id. We agree and thus reject the district court's application of the "some value" test.[7]

The relevant question in determining whether a mailer offering only credit is a firm offer of credit is not whether the offer of credit is valuable but whether it is firm as defined by the statute. Because the mailers at issue in these appeals meet the statutory definition of firm offer of credit, neither district court erred in their ultimate conclusion that judgment on the pleadings was warranted in favor of the defendants.

III.

Because the mailers in these cases fall within the statutory definition of firm offer of credit, appellees did not violate FCRA by accessing appellants' credit information to extend firm offers of credit to them. Accordingly, we affirm the judgments of the district courts.

_____

_____

[7]The Poehl court recently had occasion to revisit the issue in another case in which it rejected the "some value" test in light of Sullivan. See Klutho v. Oxford Lending Group, LLC, 2008 WL 1701171, at *4 (E.D. Mo. April 9, 2008).