Anthony SULLIVAN, individually, and on behalf of all others similarly situated, Plaintiff,

v.

GREENWOOD CREDIT UNION, and John Does 1–5, Defendants.

Civil Action No. 06–11368–JLT.

United States District Court, D. Massachusetts.

Aug. 13, 2007.

Scott C. Borison, Legg Law Firm LLC, Frederick, MD, for Plaintiff.

Harvey Weiner, Jill M. Brannelly, John J. O'Connor, Peabody & Arnold LLP, Boston, MA, for Defendant Greenwood Credit Union.

Christopher M. Lefebvre, Pawtucket, RI.

## MEMORANDUM

TAURO, District Judge.

Plaintiff Anthony Sullivan brings this action on behalf of a class of 2,055,000 consumers who received a letter from Defendant Greenwood Credit Union notifying recipients that, based on the individual consumer's credit report, he was "pre-approved" for a home loan. Plaintiff charges that Defendant unlawfully accessed the credit reports of Plaintiff and the purported class, and seeks statutory damages in the amount of $1,000 per person based on an alleged willful violation of the federal Fair Credit Reporting Act ("FCRA"). Defendant moves for summary judgment, arguing that the letter complies with FCRA and, alternatively, that there is no evidence that Defendant recklessly disregarded its FCRA obligations.

### Background

The undisputed facts are as follows:

Defendant Greenwood Credit Union purchased the names and information of consumers meeting certain financial criteria from TransUnion Credit Bureau ("TransUnion"). In so doing, Defendant caused TransUnion to furnish Defendant with Plaintiff's consumer report, within the meaning of FCRA.

Plaintiff did not consent to Defendant's access of his credit report. Defendant then sent an unsolicited letter to such consumers, including Plaintiff, which announced, among other things, that:

- "Because of your excellent credit, you have been pre-approved* * for a home loan, up to 100% of the value of your home." [1]

- "This prescreened offer of credit is based on information in your credit report indicating that you met certain criteria. This offer is not guaranteed if you do not meet our criteria including providing acceptable property as collateral." [2]

- " * * Limited time offer to customers who qualify based on equity, income, debts, and satisfactory credit. Rates and terms subject to change without notice. Most loan programs require both a satisfactory property appraisal and title exam for final approval If at time of offer you no longer meet initial criteria, offer may be revoked." [3]

Raymond G. Leveille Jr., the head of direct lending, and corporate designee of Defendant, acknowledged at his deposition that the letter did not disclose specific loan terms. He explained that the letter "wasn't intended to disclose a rate so it is not—there is not a rate on there purposely. It is intended to solicit a phone call." [4] Leveille explained that a consumer could not call up and simply accept a loan of-

---

1. Compl., Paper # 1, Ex. 1.

2. *Id.*

3. *Id.*

4. Leveille Dep., Paper # 34–9, p. 101:7–13, Jan. 19, 2007.

fered in the letter.[5] Nor did Defendant provide a specific interest rate when an individual responded to the letter.[6] Leveille also clarified that Defendant used third-party investors to underwrite the loans, and that some eligibility information was determined by these underwriters.[7]

Defendant contends it adequately vetted its letter through a legal compliance process with both TransUnion and external counsel, but Plaintiff has identified deposition testimony disputing whether or not Defendant could reasonably rely on TransUnion and whether external counsel actually reviewed the letter for compliance with FCRA. Because the court does not reach the question of willfulness, these disputes are not material.

Plaintiff also alleges that "[t]he John Doe Defendants are others who may have been [sic] aided, instigated or participated in the actions complained of in this complaint."[8] Plaintiff has not amended his complaint to name any of these defendants.

### Discussion

#### Summary Judgment Standard

Confronted with a motion for summary judgment, the court must pierce the pleadings, assaying the actual evidence, in the form of affidavits, answers to deposition questions, and attached exhibits, to determine if there is a genuine dispute of material fact that warrants presentation to a jury, or if instead, the case can be resolved as a matter of law on the undisputed facts.[9] Once the moving party identifies a deficiency in this evidence, the non-moving party must present evidence demonstrating a trial-worthy dispute.[10] Though all inferences should be drawn in favor of the non-moving party, such party may not rely on "conclusory allegations, improbable inferences, and unsupported speculation."[11]

#### What does FCRA require?

■ Defendant contends that summary judgment is warranted because the undisputed facts indicate that there is no violation of FCRA. The statute forbids a consumer reporting agency, like TransUnion, from furnishing a consumer report in connection with any credit transaction not initiated by the consumer, unless "the transaction consists of a firm offer of credit or insurance."[12] FCRA defines the term "firm offer of credit:"

> The term "firm offer of credit or insurance" means any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:
>
> (1) The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established—

---

5. *Id.*

6. *Id.* at 101:14–21.

7. Leveille Dep., Paper # 34–8, 49:20–52:2.

8. Compl., Paper # 1, Ex. A, ¶ 5.

9. *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico,* 394 F.3d 40, 42 (1st Cir.2005).

10. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

11. *Mullin v. Raytheon Co.,* 164 F.3d 696, 698 (1st Cir.1999).

12. 15 U.S.C. § 1681b(c)(1)(B) (2007).

(A) before selection of the consumer for the offer; and

(B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.

(2) Verification

(A) that the consumer continues to meet the specific criteria used to select the consumer for the offer ...; or

(B) of the information in the consumer's application for the credit or insurance....

(3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance.... [13]

In this way, "a firm offer of credit under the Act really means a firm offer if you meet certain criteria." [14]

Plaintiff argues that the letter sent by Defendant is not a firm offer of credit, essentially because it is not an offer, as it contains no specific terms, such as loan amount, interest rate, or term of years, that could be accepted and enforced. Defendant argues that such terms are not required, and that its letter was a firm offer of credit as it would honor the letter and extend credit if the consumer was determined to be eligible. Each party is armed with a canon of statutory construction to support its argument. Because

courts should assume Congress uses legal terms according to their customary legal meaning, Plaintiff argues that a "firm offer of credit" must, by definition, be an offer. [15] Relying on basic contract law, Plaintiff notes that an offer of credit that failed to provide a loan amount, interest rate, or term, would fail to be an offer for lack of definiteness. Defendant responds that though Congress took the time to define "firm offer of credit," and even listed five disclosures that should be made by any unsolicited user of credit reports, [16] it nowhere required disclosure of the specific terms of credit. Under the doctrine of *"expressio unius est exclusio alterius,"* Defendant argues that this court should infer a congressional intent that such terms are not required. [17]

The First Circuit has never grappled with the definition of a "firm offer of credit." The Seventh Circuit has reasoned that to give FCRA real meaning, a firm offer of credit must be something which, considering the entire offer, must convey value to the consumer in the form of an offer for a real credit product, and not be a mere sham or solicitation. [18] Specifically, that court held that simply applying the basic statutory requirement that the offer would be honored was inadequate: "Defin-

---

**13.** 15 U.S.C. § 1681a(*l*).

**14.** *Kennedy v. Chase Manhattan Bank USA, NA,* 369 F.3d 833, 841 (5th Cir.2004).

**15.** *See United Techs. Corp. v. Browning–Ferris Indus.,* 33 F.3d 96, 99 (1st Cir.1994) ("Under accepted canons of construction, legal terms used in framing a statute are ordinarily presumed to have been intended to convey their customary legal meaning.") (looking to common law and Black's Law Dictionary for the definition of the term "contribution," as used in the federal Comprehensive Environmental Response, Compensation and Liability Act).

**16.** 15 U.S.C. § 1681m(d)(1)(A)-(E).

**17.** *See Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003) ("[T]he canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." (internal quotations and citations omitted)).

**18.** *Cole v. U.S. Capital, Inc.,* 389 F.3d 719, 728 (7th Cir.2004) (recognizing a letter offering a minimum $300 car loan was really a solicitation to buy a car, and not a meaningful offer of credit).

ing a firm offer of credit as merely any offer that will be honored elevates form over substance, 'exalts artifice above reality and ... deprives the statutory provision in question of all serious purpose.' " [19] But even under Seventh Circuit precedent, a "firm offer of credit" need not meet a state law definition of an offer.[20] A later Seventh Circuit case also clarified that a court confronted with a such a claim "need only determine whether the four corners of the offer satisfy the statutory definition ..., and whether the terms are honored when consumers accept." [21]

Other district courts looking at this issue, including Judge Stearns sitting in this district in the *Dixon v. Shamrock Fin. Corp.* case, read the Seventh Circuit precedent narrowly and have not made much of the requirement that an firm offer of credit have value.[22] These courts emphasize instead that the firm offer of credit need only comply with federal requirements and not be a "sham offer used to pitch a product rather than extend credit." [23] "A number of district courts have found a 'firm offer' where a mailing contains only the thinnest of assurances that an extension of credit is actually being contemplated." [24] In fact, Judge Stearns, in addition to the three other district courts he identified, concluded that specific credit terms need not be included.[25] Plaintiff identifies no cases adopting a contrary position.

This court joins Judge Stearns's conclusion. Plaintiff's arguments that lenders should be required to disclose more information carry some intuitive appeal. It

would be nice if recipients of such letters had enough information to make immediate comparisons between lenders, but FCRA does not go so far as to require this. As Defendant notes, loan terms vary from consumer to consumer, based on eligibility and consumer preference. It makes more sense, therefore, that a consumer seeking further information would have to call to obtain that information. As courts have recognized, where other laws, such as the Truth in Lending Act regulate loan terms, and where FCRA is explicit as to its requirements, it would be error to read additional requirements into the statute.[26]

Instead, this court holds that if the letter assures the consumer that he is guaranteed to receive credit if he meets certain conditions, and there is no evidence that the letter is a sham "intended to lure [recipients] into something other than a bone fide credit transaction," the letter is a firm offer of credit under FCRA.[27] Though the value of such an indefinite offer to the consumer may be sparse, such a letter still provides some value by letting consumers know that if certain disclosed conditions are met, a loan is available. As long as that loan is in fact available, and is not a pretense for another transaction, the requirements of FCRA are met.

*Was the letter a firm offer of credit?*

■ Here Plaintiff does not allege that Defendant was not offering loans to qualified callers or that Defendant attempted to solicit other non-credit transactions.

---

**19.** *Id.* at 727.

**20.** *Id.* at 726 n. 6.

**21.** *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 956 (7th Cir.2006).

**22.** 482 F.Supp.2d 172, 176 n. 4 (D.Mass. 2007) (Stearns, J.).

**23.** *Id.*

**24.** *Id.* at 175 (collecting cases).

**25.** *Id.* at 175–76 (collecting cases).

**26.** *Id.*

**27.** *Id.* at 176–77.

Though the letter did not disclose specific terms, it did indicate to Plaintiff that his credit report led him to be pre-approved for a loan, subject to certain conditions. In this way, the letter is a "firm offer of credit" within the meaning of FCRA.

Plaintiff seeks to distinguish *Dixon* on the grounds that it was decided on a Motion to Dismiss, looking simply at the four corners of the letter. Plaintiff argues that here, the summary judgment record presents a clear admission that the letter sent to Plaintiff was not an offer, but rather a solicitation. But nothing in the case law indicates that a court should not focus on the four corners of the letter at the summary judgment stage.[28] Of course, if something in the record indicates that the purported firm offer of credit is simply a sham, the court would not ignore it.[29]

Here, Plaintiff asserts that Leveille's deposition testimony constitutes such evidence. But Leveille did not admit that the letter was not a firm offer of credit. Instead, he stated that it was intended to solicit a phone call and not to disclose a rate. According to Leveille, the offer in the letter was not something that a recipient could call up and immediately accept. These statements are not an admission that the letter was not a firm offer of credit or a sham solicitation. The rest of the deposition makes clear that in admitting that the letter was a solicitation, Leveille meant that the letter solicited consumers to inquire for further details about bona-fide credit transactions. There is no evidence to the contrary.

■ Leveille's statements do constitute an admission that the letter was not an offer within the meaning of state contract law. But for reasons previously explained, this court joins the other courts that reject the notion that a FCRA "firm offer of credit" must be a definite "offer" within the meaning of state contract law. In this way, Leveille's admission that the letter was intended to solicit phone calls is not an admission that the letter was not a firm offer of credit, within the meaning of FCRA.

Similarly, the fact that Defendant used third-parties to underwrite its loans is immaterial. The letter sent to Plaintiff guaranteed that credit would be extended if certain conditions were met. As long as Defendant could live up to that guarantee, it does not matter who would ultimately supply the loan. Of course, if the third party lenders had different eligibility requirements than the requirements Defendant used to prescreen credit reports, Defendant might not have been able to live up to its guarantee as required by FCRA. But there is no indication of that here, as Plaintiff has adduced no evidence that interested qualified consumers were denied loans.

### Conclusion

Because the letter sent to Plaintiff was a firm offer of credit under FCRA and because Plaintiff has no evidence in the record that could genuinely dispute the proposition that these letters were not shams, but instead enticements to enter into a legitimate credit transaction, Defendant's *Motion for Summary Judgment* is AL-

---

**28.** When the Seventh Circuit announced the four corners rule, it ruled in favor of a plaintiff on a motion for class certification, and noted that a class was proper because the question of the legal effect of the letter predominated over individual questions. *Murray*, 434 F.3d at 956.

**29.** *See Dixon*, 482 F.Supp.2d at 177 (noting that in addition to the fact that the mailing itself complied with FCRA, the case was dismissed for Plaintiff's failure to allege the additional fact that the actual transaction was a sham).

LOWED. As the court finds no FCRA violation, summary judgment shall enter in favor of all defendants.

*Additional Matters*

Also pending is Plaintiff's *Motion for Class Certification,* which the Parties asked the court to hold in abeyance pending a decision on the *Motion for Summary Judgment.* Plaintiff's *Motion for Class Certification* is now DENIED AS MOOT.[30]

■ Plaintiff also moves to strike Defendant's Rule 68 offer of judgment of $1,000 to Plaintiff individually. Plaintiff argued that Defendant's offer sought to improperly pick off the class representative, and impose excessive costs on him should the Rule 68 cost transfer provisions apply. Defendant counters that Rule 68 did not forbid such an offer, and that other courts had applied Rule 68 to class actions. But Rule 68 only transfers costs where a prevailing plaintiff recovers less than the amount of an offer, and does not apply when a defendant prevails.[31] Instead, in such a situation, the discretionary cost shifting provisions of Rule 54(d) apply.[32] This dispute, while interesting, is now moot. Because this court is entering summary judgment for the Defendant, Plaintiff's *Motion to Strike* is DENIED AS MOOT.

AN ORDER WILL ISSUE.

---

**30.** *See, e.g., Frazier v. Am. Airlines, Inc.,* 434 F.Supp.2d 279, 292 (D.Del.2006) ("Because summary judgment will be granted in favor of Defendants, the Court will also deny as moot the pending Motions For Class Certification.").

**31.** *Delta Air Lines v. August,* 450 U.S. 346, 354, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981); *Gil–de–Rebollo v. Miami Heat Ass'ns,* 137 F.3d 56, 66 (1st Cir.1998).

**32.** *Delta Air Lines,* 450 U.S. at 354, 101 S.Ct. 1146.