Filed 5/13/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ALEXIS MICHELE SOSA,<br><br>    Plaintiff and Appellant,<br><br>       v.<br><br>CASHCALL, INC., et al.,<br><br>    Defendants and Respondents. | G056974<br><br>(Super. Ct. No. 30-2017-00919315)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Walter P. Schwarm, Judge.  Reversed.

Lakeshore Law Center and Jeffrey N. Wilens for Plaintiff and Appellant.

Finlayson Toffer Roosevelt & Lilly, Michael R. Williams and Jared M. Toffer for Defendants and Respondents.

\*        \*        \*

Potential lenders are generally prohibited from accessing a consumer's credit report without the consumer's consent. There is an exception for lenders who intend to make a "firm offer of credit to the consumer." (Civ. Code, § 1785.11, subd. (b)(2).)[1] A "firm offer of credit" is a term of art; essentially it means the lender intends to make the loan if a consumer agrees to the proposed terms. If a consumer proves that a potential lender accessed his or her credit report without the requisite intent, then the consumer can recover civil penalties (up to $2,500) for each unauthorized access.

Defendants CashCall, Inc. and LoanMe, Inc. (collectively "the lenders"), accessed thousands of credit reports and mailed loan offers to the consumers. Plaintiff Alexis Michele Sosa was among those consumers. Sosa sued the lenders for accessing her credit report. During discovery, Sosa asked the lenders: of the consumers who were mailed offers, how many were actually given loans? The trial court found Sosa's interrogatory to be irrelevant and granted the lenders' motion for summary judgment.

We disagree. There is a triable issue of material fact: whether the lenders intended to honor the proposed loan terms if Sosa accepted the offers. Further, Sosa's interrogatory was relevant to the lenders' intent. Indeed, the trial court's rulings dealt a "one-two punch" to her lawsuit: the court first prohibited Sosa from obtaining relevant evidence; then the court dismissed her case, in part, for lack of relevant evidence. Thus, we reverse the court's granting of the lenders' motion for summary judgment.


I

FACTS AND PROCEDURAL BACKGROUND

Through a marketing and solicitation vendor (Ralis), the lenders requested from a credit reporting agency (Experian), a broad list of anonymous consumers who met certain loan criteria. After the lenders screened the initial list, Experian sent the lenders a

---

[1] Further undesignated statutory references are to the Civil Code.

second, narrower list which included the consumers' names, addresses, partial social security numbers, and credit information. Through a print vendor, the lenders then mailed loan offers to the targeted consumers.

A typical offer stated: "You are Pre-Qualified for a Personal Loan of up to $10,600."[2] The offers included a toll-free number: "Say 'YES' Now[.]" The offers stated the proposed loan terms and conditions: "The APR ranges from 99.75% to 184.36%[.]" The offers included prescreen and opt-out notices: "This 'prescreened' offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria. If you do not want to receive prescreened offers of credit from this and other companies, call the consumer reporting agencies toll-free . . . ."

In April 2015, LoanMe obtained a list of 369,025 consumer credit reports from Experian, including Sosa's credit report. Within 30 days, LoanMe mailed Sosa a loan offer. LoanMe repeated this process in October 2015 (Sosa was among 250,000 consumers), and March 2016 (Sosa was among 519,848 consumers). In March 2017, CashCall obtained a list of 598,816 consumer credit reports from Experian, including Sosa's consumer credit report.

*Court Proceedings*

Sosa filed a lawsuit alleging the lenders had violated the California Consumer Reporting Agencies Act (CCRAA). (See § 1785.1 et seq.) Sosa brought the action on behalf of herself. Sosa requested "<u>two</u> civil penalties of $2,500 each for each occasion on which [the lenders] obtained data from [her] consumer's file or her consumer credit report without permission or an authorized purpose . . . ."

---

[2] The lenders provided "exemplars" of the loan offers during discovery proceedings.

Later, Sosa filed a motion to compel responses to special interrogatories. One interrogatory asked the lenders: "'With respect to each firm offer of credit . . . state what specific criteria was used to select [Sosa] for the offer . . . .'" The court granted the motion in a written ruling because "there is an issue as to whether [the lenders] accessed [Sosa's] credit report for a permissible purpose . . . ." The second interrogatory asked the lenders how many of the consumers who were mailed offers were actually given loans. The court denied the motion in a written ruling because it "is beyond the scope of relevant discovery (overbroad) as it does not pertain to the issue of whether a 'firm offer of credit' was extended to [Sosa]."

The lenders filed a motion for summary judgment. The court found that "it is undisputed that [the lenders] mailed offers of credit to [Sosa] as a result of the soft inquir[ies] . . . made on [Sosa's] credit. . . . Additionally, it is undisputed the offers of credit 'contained a minimum loan amount, the range of potential interest rates, and an explanation of repayment terms.' . . . The only reference to a possible denial of credit included within the offers, referred specifically to circumstances where [Sosa] no long met the standards used to send out the offer."

The court ruled "the evidence offered to dispute the instant motion for summary judgment is speculative and insufficient to support a finding in favor of [Sosa]. Consequently, the motion is granted." (Boldfacing and capitalization omitted.)

II

DISCUSSION

Sosa argues the trial court erred in granting the lenders' motion for summary judgment, in part, based on its discovery ruling. We agree.

4

*A. Standards of Review*

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844 (*Aguilar*).) The trial court properly grants the motion if all the papers submitted establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (*Id.* at p. 843; Code Civ. Proc., § 437c, subd. (b).)

The moving party bears the initial burden to make a prima facie showing that no triable issue of material fact exists. (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts. (*Ibid.*) Courts "'construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and *resolve doubts about the propriety of granting the motion in favor of the party opposing it*.'" (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201-1202, italics added.)

In a motion for summary judgment "the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence, . . . that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).) A motion for summary judgment ruling is reviewed de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.)

A proponent of discovery must explain how the evidence sought is relevant to a disputed material fact. (Code Civ. Proc., § 2031.310, subd. (b)(1).) We review a court's ruling on a motion to compel discovery for an abuse of discretion. (*2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1387.) An abuse of discretion "arises if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard [citations]." (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

5

*B. Legal Principles Regarding Access to Consumer Credit Reports*

Generally, credit reporting agencies are prohibited from disclosing confidential consumer credit information. (§ 1785.11, subd. (a).) "In addition to any other remedy provided by law, a consumer may bring an action for a civil penalty, not to exceed two thousand five hundred dollars ($2,500), against" a party who illegally obtains access and/or acquires data from a consumer's credit report. (§ 1785.19, subd. (a)(1) & (2).) "If a plaintiff prevails in an action under subdivision (a) he or she shall be awarded the civil penalty, costs, and reasonable attorney fees." (§ 1785.19, subd. (b).)[3]

Without a consumer's consent, a potential lender may only access or obtain data from a consumer credit report when the expected credit transaction "involves a firm offer of credit to the consumer." (§ 1785.11, subd. (b).) A "firm offer of credit" is statutorily defined as "any offer of credit to a consumer that will be honored if, based on information in a consumer credit report on the consumer and other information bearing on the creditworthiness of the consumer, the consumer is determined to meet the criteria used to select the consumer for the offer." (§ 1785.3, subd. (h).)

"To determine whether the offer of credit comports with the statutory definition, a court must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the 'offer' was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit."

---

[3] The lenders have not argued that Sosa is required to show actual damages for the alleged section 1785.19 violations. (See *Olson v. Six Rivers National Bank* (2003) 111 Cal.App.4th 1, 9, second italics added ["A person (or bank) who *obtains* a consumer credit report for purposes other than those approved . . . may be held liable for damages *or a civil penalty*"]; compare *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 632-634 [plaintiffs were required to show actual damages in a complaint alleging violations of sections 1785.14, 1786.20, 1786.29, and 1786.18].)

(*Cole v. U.S. Capital Inc*. (7th Cir. 2004) 389 F.3d 719, 727-728 (*Cole*).)[4] "To decide whether [a lender] has adhered to the statute, a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in *Cole*), *and whether the terms are honored when consumers accept*." (*Murray v. GMAC Mortg. Corp*. (7th Cir. 2006) 434 F.3d 948, 956 (*Murray*), italics added.)

*C. Analysis*

If we were to confine our review to the "four corners" of the lenders' offers, we would conclude that offers met the definition of a "firm offer of credit." As the trial court found, there is no dispute that the offers to Sosa included the minimum loan amounts, the ranges of potential interest rates, and a required explanation of the proposed repayment terms. (See *Cole*, *supra*, 389 F.3d at pp. 727-728.)

But what is, in fact, a triable issue of material fact is the second part of the test for a "firm offer of credit." That is, we do not know from the four corners of the loan offers what was the lenders' intent: whether the lenders would have honored the proposed loan terms had Sosa accepted them. (See *Murray*, *supra*, 434 F.3d at p. 956.) In other words, we do not know whether the lenders' mailings were legitimate credit products, or merely guises for solicitation. (See *Cole*, *supra*, 389 F.3d at pp. 727-728.) Indeed, there are reasonable inferences on both sides of this material issue.

The lenders asserted in the trial court: "On each of the occasions LoanMe and CashCall conducted a prescreening inquiry into [Sosa's] credit, they did so for the sole purpose of extending to [Sosa] *a firm offer of credit*." (Italics added.) In support, the lenders offered a declaration from Andre Valenzuela, an employee of the lenders' marketing vendor, Ralis. Valenzuela stated that: "[The lenders] regularly make

---

[4] The CCRAA is substantially based on federal consumer credit laws; therefore, federal authority is "entitled to substantial weight when interpreting the California provisions." (*Olson v. Six Rivers National Bank* (2003) 111 Cal.App.4th 1, 12.)

7

prescreened *firm offers of credit* to potential loan applicants. In order to accomplish this, Ralis, on behalf [of the lenders], will request from Experian . . . a list of consumers that meet certain criteria as specified by CashCall and/or LoanMe." (Italics added.) This appears to be a legal conclusion by the lenders' vendor, rather than a statement of the lenders' intent.[5] But in any event, the lenders' purported factual assertion seems reasonable. That is, it seems reasonable to assume that potential lenders would send offers to only those consumers with whom they intend to actually make loans.

However, Sosa maintains in this court, as she did in the trial court: "[The lenders'] 'purpose' or 'intent' is a triable issue of material fact." Sosa argues: "Significantly, [the lenders] did not provide a declaration from anyone employed by LoanMe or CashCall who expressly stated that all qualified acceptances would have been honored. In fact, there is no declaration from anyone . . . stating whether the lenders *actually did grant loans* or intended to grant loans to all qualified recipients who accepted the offer." (Italics added.) To be clear, there is absolutely no evidence in the record to substantiate whether *any* of the hundreds of thousands of loan offers mailed by the lenders to the consumers were actually honored.

Sosa supports her argument by pointing out that a jury is instructed: "You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence." (CACI No. 203; Evid. Code, § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of a party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust"].)

---

[5] Sosa argued for the first time at oral argument that Valenzuela's declaration constitutes impermissible hearsay. "We do not consider arguments that are raised for the first time at oral argument." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9.) Nonetheless, even if Sosa's belated evidentiary argument is correct, this does not alter our analysis or our conclusion that the lenders' motion for summary judgment was erroneously granted.

Further, Sosa argues that based on the hundreds of thousands of loan offers that the lenders mailed to consumers: "Several inferences arise from these facts. Maybe [the lenders] knew the response rate would be extremely low and they would be able to fund loans to all 'takers.' But a contrary inference is that [the lenders] intended to use the credit pulls to identify many suitable candidates for loans while only extending loans to the 'cream of the crop' of the responders." (See *Veera v. Banana Republic, LLC* (2016) 6 Cal.App.5th 907, 921 ["""bait and switch" is a form of false advertising in which advertisements may not be bona fide because what the merchant intends to sell is significantly different from that which drew the potential customer in'"].)

Here, there are reasonable inferences on both sides of the only material factual issue in dispute in this case: whether the lenders actually intended to honor the loan terms if Sosa was currently eligible and accepted the mailed offers. Again, in a motion for summary judgment, we must consider "all inferences reasonably deducible from the evidence, . . . that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).) Further, we must "'resolve doubts about the propriety of granting the motion in favor of the party opposing it.'" (*Seo v. All-Makes Overhead Doors*, *supra*, 97 Cal.App.4th at pp. 1201-1202.) Given these legal standards, we find in Sosa's favor and reverse the trial court's granting of the lenders' motion for summary judgment.

The lenders argue "it was incumbent on [Sosa] to offer some evidence to show that either (1) she applied for a loan from [the lenders] after receiving their offers of credit and was denied a loan despite meeting [the lenders'] credit criteria, or (2) she responded to [the lenders'] offers of credit and was diverted into some other . . . business dealing (e.g., not a personal loan)." We disagree. The lenders do not cite any authority for the proposition that a consumer must first apply for a loan in order to have standing to sue under section 1785.19. Indeed, in a lawsuit seeking a civil penalty under section 1785.19, it is sufficient for a consumer to show that his or her credit report was accessed without a permissible purpose. (See § 1785.19, subd. (a)(1) & (2).)

9

Our analysis is also supported by the consumer protection purposes of the CCRAA: "The Legislature finds and declares as follows: [¶] . . . [¶] (b) Consumer credit reporting agencies have assumed a vital role in assembling and evaluating consumer credit . . . . [¶] (c) There is a need to insure that consumer credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. [¶] (d) It is the purpose of this title to require that consumer credit reporting agencies adopt reasonable procedures for meeting the needs of . . . consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality . . . and proper utilization of such information in accordance with the requirements of this title. [¶] (e) The Legislature *hereby intends* to regulate consumer credit reporting agencies pursuant to this title in a manner which will *best protect the interests of the people* . . . ." (§ 1785.1, subds. (b),(c),(d) & (e), italics added.)

To be sure, rather than forcing Sosa to first apply for a loan, we think that her disputed interrogatory would have provided relevant evidence that may have tended to prove (or disprove) her cause of action. "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness . . . , having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Generally, a party's intent is proven by circumstantial evidence. (*Locke v. Warner Bros., Inc*. (1997) 57 Cal.App.4th 354, 368.)

Here, Sosa asked the lenders: of the consumers who were mailed offers, how many were actually given loans? We think this interrogatory was highly relevant to the lenders' intent. That is, the answer would have provided circumstantial evidence relevant to the issue of whether the lenders intended to honor the proposed loan terms if consumers such as Sosa accepted the mailed offers. (See *Murray*, *supra*, 434 F.3d at p. 956, italics added ["To decide whether [a lender] has adhered to the statute, a court need only determine whether the four corners of the offer satisfy the statutory definition . . . *and whether the terms are honored when consumers accept*"].)

10

The lenders cite a federal district court's unpublished opinion for the proposition that Sosa has engaged in "blind speculation" that the lenders did not intend to honor the offers they had mailed to her. (See *Derderian v. Southwestern & Pac. Specialty Fin., Inc.* (9th Cir. 2016) 673 Fed.Appx. 736, 738.) We disagree. An unpublished federal trial court opinion is merely persuasive authority. (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1432, fn. 6.) And when reviewing a trial court's ruling on a motion for summary judgment, we must examine "the entire context" of the facts *in each particular case*. (See *Cole*, *supra*, 389 F.3d at pp. 727-728.)

In this case, because of the court's erroneous discovery ruling, Sosa was effectively prevented from discovering relevant evidence in order to effectively challenge the lenders' motion for summary judgment.

Our dissenting colleague cites four federal opinions for the legal proposition that in a motion for summary judgment a lender can "rely solely on the terms of the mailed offer to show it intended to honor the offered credit." (Dis. opn., *post*, at p. 3.) We respectfully disagree.

Three of the federal court opinions are distinguishable; the fourth does not hold that a lender can rely *solely* on the terms of its offer to prove its intent. (See *Gelman v. State Farm Mut. Auto. Ins. Co.* (3d Cir. 2009) 583 F.3d 187, 192 [appellate court analyzed the details of an insurer's firm offer of insurance, rather than a lender's firm offer of credit]; *Villagran v. Central Ford, Inc.* (S.D. Tex. 2007) 524 F.Supp.2d 866, 871 [trial court analyzed a motion to dismiss for failure to state a claim (equivalent to a demurrer), rather than a motion for summary judgment]; *Dixon v. Shamrock Financial Corp.* (D. Mass. 2007) 482 F.Supp.2d 172, 176 [same]; *Sullivan v. Greenwood Credit Union* (D. Mass. 2007) 499 F.Supp.2d 83, 87 [trial court held that a lender can rely on the terms of an offer mailed to a consumer so "long as that loan is in fact available"].)

11

Our colleague states "it is difficult to decipher precisely how the majority applied the sequential burden shifting procedure under *Aguilar*[, *supra*, 25 Cal.4th 826]." (Dis. opn., *post*, at p. 8.) We shall attempt to clarify.

In a motion for summary judgment, the moving party bears the initial burden to make a prima facie showing that no triable issue of material fact exists. (*Aguilar*, *supra*, 25 Cal.4th at p. 845.) If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts. (*Ibid*.) "In determining if . . . there is no triable issue as to any material fact, the court shall consider all of the evidence . . . and all *inferences reasonably deducible from the evidence*, *except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences* or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c), italics added.)

Here, in the motion for summary judgment, the lenders attached a declaration (from a vendor) averring that the lenders accessed consumer credit reports for the purpose of making firm offers of credit. But as to the hundreds of thousands of credit reports that were accessed, the lenders did not submit any evidence whatsoever that they actually followed through on any of the loan offers mailed to the consumers.

So did the lenders meet their initial burden? Well, it is arguably a *reasonable inference* that the lenders intended to honor the advertised loans if the consumers had accepted the proposed loan terms. But given the hundreds of thousands of mailed loan offers, and the complete absence of evidence regarding whether *any* of the loan offers were actually honored (compounded by the court's erroneous discovery ruling), it is also a reasonable inference that the thousands of loan offers were not, in fact, firm offers of credit. (See *Murray*, *supra*, 434 F.3d at p. 956, italics added ["a court need only determine whether the four corners of the offer satisfy the statutory definition . . . , *and whether the terms are honored when consumers accept*"]; see also *Los Angeles Unified School Dist. v. Trustees of Southern California IBEW-NECA Pension Plan*

12

(2010) 187 Cal.App.4th 621, 627-628 ["'information is discoverable if it is unprivileged and is either relevant to the subject matter of the action or reasonably calculated to reveal admissible evidence'"].)

Thus, to clarify our analysis regarding burden shifting, when there is a reasonable inference that is contradicted by another reasonable inference, the motion for summary judgment "shall not be granted." (See Code Civ. Proc., § 437c, subd. (c).)

III

DISPOSITION

The judgment is reversed. Sosa is entitled to recover her costs on appeal.

MOORE, J.

I CONCUR:

BEDSWORTH, ACTING P. J.

Aronson, J., Dissenting.

The majority concludes the trial court erred by granting summary judgment because there exists a factual dispute whether the defendant lenders CashCall, Inc., and LoanMe, Inc., intended to honor the proposed loan terms if plaintiff Alexis Michele Sosa had accepted them. Based on my independent review of the evidence, I disagree. The lenders met their initial burden on summary judgment to show they would have honored the proposed terms, and in response Sosa failed to meet her burden to show the existence of a disputed fact. I also conclude the trial court did not abuse its discretion in finding Sosa's proposed interrogatory would not have shed light on the issue of the lenders' intent, and, in any event, any conceivable error in not compelling a response did not prejudice Sosa. I therefore would affirm the trial court's order granting the lenders' motion for summary judgment.

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of [her] own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) Thus, only if the moving party meets its initial burden do we consider whether the opposition has raised a triable issue of material fact. (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939-940.) "Responsive evidence that 'gives rise to no more than mere speculation' is not sufficient to establish a triable issue of material fact." (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889-890.)

*Defendants Produced Evidence Satisfying Their Initial Burden*

Here, the sole issue is whether the lenders made a "firm offer of credit" to Sosa. Under the California Consumer Credit Reporting Agencies Act (CCRAA), Civil Code, § 1785.1 et seq., a "firm offer of credit" is statutorily defined as "any offer of

1

credit to a consumer that will be honored if, based on the information in a consumer credit report on the consumer and other information bearing on the creditworthiness of the consumer, the consumer is determined to meet the criteria used to select the consumer for the offer." (Civ. Code, § 1785.3, subd. (h).) "Because the [CCRAA] is substantially based on the Federal Fair Credit Reporting Act (15 U.S.C. §§ 1681-1681t) [FCRA], judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions." (*Olson v. Six Rivers National Bank* (2003) 111 Cal.App.4th 1, 12.) Indeed, it would be a daunting task for a party to argue federal opinions should not definitively guide our interpretation. Congress provided that the definition of a firm offer of credit "shall be construed to apply in the enforcement and interpretation of the laws of any State governing consumer reports." (15 U.S.C., § 1681t(c).) Congress's intent that a firm offer of credit have a uniform meaning would be frustrated if the meaning varied from state to state. (*Cole v. U.S. Capital* (7th Cir. 2004) 389 F.3d 719, 726, fn. 6 (*Cole*).) Following Congress's intent, the CCRAA's definition of a "firm offer of credit" is substantively identical to the FRCA's definition; indeed, a consumer may not sue under the CCRAA if the consumer has a pending suit or obtained a judgment under the FCRA based on the same act or omission. (Civ. Code, § 1785.34.)

Under the FRCA, the term "firm offer of credit" is defined as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." (15 U.S.C. § 1681a(d)(l).) In *Cole*, *supra*, 389 F.3d at p. 728, the federal appellate court construed a "firm offer of credit" as requiring "[t]he terms of the offer, such as the rate of interest charged, the method of computing interest and the length of the repayment period" to provide appreciable value to the consumer, and that the lender would have honored the offer. (But see *Murray v. New Cingular Wireless Services, Inc.* (7th Cir. 2008) 523 F.3d 719, 722 ["When credit

2

histories are used to offer credit (or insurance) and nothing but, the right question is whether the offer is 'firm' rather than whether it is 'valuable'"].)

To meet their initial burden on summary judgment to show they made firm offers of credit, the lenders submitted exemplars of the credit offers made to Sosa. Sosa does not dispute the lenders' offers "contained a minimum loan amount, the range of potential interest rates, and an explanation of repayment terms."

Based on case law interpreting the FCRA, the lenders also asserted the credit offers constituted evidence of their intent to honor the offers. A firm offer of credit, by definition, is a credit offer that will be honored if the consumer continues to meet the specified criteria used to identify the consumer's eligibility for the offer. Case law interpreting the FRCA allows a lender to rely solely on the terms of the mailed offer to show it intended to honor the offered credit. (See, e.g., *Sullivan v. Greenwood Credit Union* (D. Mass. 2007) 499 F.Supp.2d 83, 88 (*Sullivan*) ["nothing in the case law indicates that a court should not focus on the four corners of the letter at the summary judgment stage" to determine whether lender's letter was a firm offer of credit].) For example, in *Gelman v. State Farm Mut. Auto. Ins. Co.* (3d Cir. 2009) 583 F.3d 187, 192 (*Gelman*), the federal appellate court concluded the defendant had made a "firm offer" that would be honored based solely on the court's review of the mailer. There, the mailer stated: "[t]his 'prescreened' offer . . . is based on the information in your consumer report indicating that you meet certain eligibility criteria. This offer is not guaranteed if you do not meet our criteria at the time of application and expires 60 days after you receive it." (*Id*. at p. 189.) The mailer also stated: "'By getting to know you personally, I can offer: Competitive rates that help you save up to $356 or more.'" (*Id.* at p. 195.) The *Gelman* court concluded this was sufficient because "[t]he mailer thus stated that the offer . . . contained therein would be honored if Gelman met certain criteria." (*Ibid.*)

Similarly, in *Villagran v. Central Ford, Inc.* (S.D. Tex. 2007) 524 F.Supp.2d 866, the district court concluded a loan offer was a firm offer of credit

3

where the offer "stated that [the plaintiff] was prequalified to receive a loan and that if she met certain criteria, she was 'guaranteed to receive a loan for the purchase of a 2003 or newer vehicle from MDA Capital.' [Citation.]  The mailing [further] stated that '[t]his offer is not guaranteed if you do not meet our criteria (including providing acceptable property as collateral).'" (*Id.* at p. 881.)  The court granted the lender's motion for summary judgment because "[t]he record does not show that Villagran took action to accept the loan offer.  Nor is there evidence that Central Ford failed to honor the loan offered to Villagran or other customers meeting the criteria." (*Ibid.*)

In *Sullivan*, *supra*, 499 F.Supp.2d 83, the district court concluded a lender's letter was a firm offer of credit under the FRCA where the letter stated (1) the consumer was "pre-approved" for a home loan; (2) the offer was a "prescreened offer of credit based on information in your credit report indicating that you met certain criteria.  This offer of credit is not guaranteed if you do not meet our criteria including providing acceptable property as collateral"; and (3) it was a "[l]imited time offer," "[r]ates and terms [were] subject to change without notice" and specified, "If at time of offer you no longer meet initial criteria, offer may be revoked." (*Id.* at pp. 84 & 88.)  The court granted the lender's motion for summary judgment "[b]ecause the letter sent to Plaintiff was a firm offer of credit under FCRA and because Plaintiff has no evidence in the record that could genuinely dispute the proposition that these letters were not shams, but instead enticements to enter into a legitimate credit transaction." (*Id.* at p. 88.)

Thus, a mailed offer guaranteeing an offer of credit if a consumer continues to meet prescreening criteria is sufficient to demonstrate the existence of a firm offer of credit. (*Id.* at p. 87; see also *Dixon v. Shamrock Financial Corp.* (D. Mass. 2007) 482 F.Supp.2d 172, 176 (*Dixon*) [lender's letter satisfied the statutory definition of "firm offer of credit" where "the letter assured Dixon that he had been 'prescreened' for a loan, in other words, that he was guaranteed to receive one if the information in his consumer report remained accurate."].)

4

Here, the offers stated Sosa was prequalified for a personal loan in a specific amount and that "[u]pon approval" verification, the specified amount will "be electronically deposited into your account in as fast as 24 hours." They further provided: "This prescreened offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria." Sosa does not dispute the offers informed her she met the credit criteria to receive a loan. But the offer also constituted evidence the lenders intended to honor the credit terms offered to Sosa and therefore satisfied the lenders' initial summary judgment burden.

Sosa contends the lenders cannot meet their initial burden to show they would have honored the offers had she accepted them by relying on "the contents of the written offers," but the only authority cited for this proposition is the following language in *Murray v. GMAC Mortgage Corp.* (7th Cir. 2006) 434 F.3d 948, 956 (*Murray*): "To decide whether [a lender] has adhered to the statute, a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in *Cole*), and whether terms are honored when consumers accept.") *Murray* is simply inapt; the opinion addressed an order denying class certification, not a dispositive order granting summary judgment or dismissal. More important, *Murray* says nothing about how a lender may satisfy its initial burden on summary judgment. Sosa offers no other authority to support her assertion a lender may not rely on the contents of its mailed offer to support the inference it would honor that offer. [1]

---

[1] The majority rejects reliance on *Gelman* because it analyzed an insurer's offer of insurance rather than a lender's offer of credit. But the FCRA expressly applies to "a firm offer of credit or insurance." (15 U.S.C. § 1681t(c); see also 15 U.S.C. 1681a(1).) The majority's distinction makes no difference; cases employ the same analysis to decide whether a lender or insurer made a firm credit offer.

The lenders expressly guaranteed they would honor the credit offers if Sosa continued to meet the prescreening qualifications. The mailed offers stated the loan amount "will be electronically deposited" upon approval verification. The mailed offers "thus stated that the offer of [credit] contained therein would be honored if [Sosa] met certain criteria." (*Gelman, supra*, 583 F.3d at p. 195.) In sum, based solely on the mailed offers, the lenders met their initial burden to show they would have honored the offer if Sosa had accepted and remained qualified.

*Sosa Failed to Present Evidence Establishing a Triable Issue of Material Fact*

Because the lenders met their initial burden, the burden shifts to Sosa to present evidence establishing the existence of a disputed fact. (See *Karle v. Capital One Bank* (D. Mass. 2016) 2016 WL 8118178, at *4 ["In the face of [the lenders'] evidence,

The majority suggests the *Villagran* and *Dixon* cases are inapposite because they were the equivalent of a demurrer rather than a summary judgment. The majority is simply wrong about *Villagran* – it is a summary judgment case. As the *Villagran* court explained, "[B]ecause this court considers materials beyond the pleadings, Central Ford's motion to dismiss is converted into a summary judgment motion." (*Villgran, supra,* 524 F.Supp.2d at p. 880.)

The *Dixon* court granted the lender's dismissal motion because the plaintiff's pleadings showed a firm offer of credit, which by definition, includes an intent to honor the offer, and the plaintiff made no allegation in his complaint that offer was a "sham." (*Dixon, supra,* 428 F.Supp.2d at pp. 176-177.) The point is that the plaintiff in *Dixon* had the burden to allege the offer was a sham. Had the plaintiff survived the demurrer, the plaintiff would have the burden in a summary judgment motion to produce evidence the offer was a sham. I fail to see why *Dixon's* discussion of a plaintiff's burden under the FCRA should be ignored because the plaintiff lost on a demurrer rather than summary judgment.

Finally, the majority misinterprets the *Sullivan* decision. The majority concludes *Sullivan* does not hold a lender can rely on a firm offer of credit to prove its intent. But the definition of a firm offer of credit necessarily includes an intent to honor the offer; otherwise, the firm offer is not firm. The majority misapplies this basic proposition. *Sullivan* expressly held a mailed offer constitutes a firm offer of credit "if the letter assures the consumer that he is guaranteed to receive credit if he meets certain conditions, and there is no evidence that the letter is a sham 'intended to lure [recipients] into something other than a bone fide credit transaction.'"

6

the plaintiff might still avoid summary judgment by putting on some evidence to show that the defendants' firm offers were shams 'in the sense that [they] would not have been honored by [the defendants] if [the plaintiff] had accepted,'" quoting *Dixon*, *supra*, 482 F. Supp. 2d at pp. 176-177].)  Sosa argues circumstantial evidence suggests the lenders did not intend to honor *all* accepted credit offers because the lenders made offers to hundreds of thousands of consumers annually whereas the total number of loans made by more than 2,500 California lenders did not exceed 306,000 in any one year.  Because Sosa seeks only an individual recovery, the proper inquiry is not whether the lenders would have honored all the credit offers, but whether they would honor the offers made to Sosa.  Although Sosa did not accept the lenders credit offer, the lenders' *response* to similarly situated consumers who did accept the offers may show whether the lenders intended to honor their offers to Sosa had she accepted.

I cannot agree with the majority's conclusion it could infer the lenders did not intend to honor their offers of credit solely on the number of loan *offers* they sent to targeted consumers.  The mere fact the lenders made a large number of credit offers does not, by itself, raise a triable issue of material fact on their intent to honor the credit offers extended to Sosa.  The number of credit offers sheds no light on the number of responses the lenders received, whether those who responded continued to meet the prescreening criteria, accepted loan offers from competing lenders, or ultimately decided not to take out a loan.  As a federal appellate court has noted, "most consumers who receive credit solicitations do not apply for the offered credit card, regardless of how attractive the terms of the offer are." (*Perry v. First National Bank* (7th Cir. 2006) 459 F.3d 816, 826.) Consequently, a lender may intend to honor all qualifying accepted credit offers because it has data showing it would receive a low response rate and even responsive consumers may no longer meet the qualifications to receive a loan.  It was Sosa's burden to produce evidence of the response rate because the lenders made their prima facie case, but Sosa,

7

in relying solely on the number of offers, failed to show the lenders did not honor the other responses they may have received from similarly situated consumers.

Of course, Sosa could have established the existence of a triable issue of fact if she had accepted the offer and been denied credit by the lenders. But Sosa acknowledged in her complaint the lenders never denied her credit because she never accepted their offer. Nor has Sosa submitted any evidence of any other similarly situated consumer who applied for but was denied credit after accepting the lenders' credit offer. There simply is no basis to conclude there is a triable issue on whether the lenders would have honored their mailed offer when Sosa presented no evidence she or anyone else accepted the offer but were rejected by the lenders. (Cf. *Gelman*, *supra*, 583 F.3d at p. 195 [court has no obligation to consider whether the lender's firm offer of credit would have been honored because plaintiff "did not allege that he responded to the . . . mailing and was denied . . . even though he satisfied the pre-screening criteria"]; *Dixon*, *supra*, 482 F.Supp.2d at p. 177 [plaintiff failed to show a firm offer of credit was a "'sham'" because "no allegation was made in the complaint that [plaintiff] – or anyone else – had ever responded to Shamrock's solicitation and then been denied credit despite meeting creditworthiness requirements or had been diverted to some other type of business dealing"].)

Unfortunately, it is difficult to decipher precisely how the majority applied the sequential burden shifting procedure required under *Aguilar*. The majority initially appears to accept Sosa's argument the lenders could not rely on the credit terms they offered Sosa to show they would have honored their offers, stating they could not discern the lenders' intent "from the four corners of the loan offers." (Maj. opn. at p. 7.) This statement suggests the lenders could not rely on their offers to meet their initial summary judgment burden. But later in the opinion, the majority states it reasonably could be inferred "potential lenders would send offers to only those customers with whom they intend to actually make loans." (Maj. opn. at p. 8.) Later still, the majority concludes

8

there are "reasonable inferences on both sides" concerning whether the lenders would have honored the loan terms extended to Sosa. (Maj. opn. at p. 9.) These statements suggest the lenders met their initial burden.

The majority attempts to clarify matters, but in doing so never directly states whether the lenders met their initial burden. One might infer the lenders did so because the majority considers Sosa's claim the sheer number of offers created a triable issue of fact. The majority, of course, could not consider Sosa's claim unless they initially found the lenders satisfied their burden. But if this is so, no reason appears why the majority also would attempt to distinguish the cases I cited to demonstrate the lenders met their initial burden. The majority could clear matters up if they simply would declare the lenders either did, or did not, meet their initial burden.

Yet another fundamental problem surfaces when attempting to discern the majority's analysis. Assuming the majority found the lenders satisfied their initial burden, the majority concludes there is a triable issue of fact based on the number of offers the lenders sent to consumers *and* "the complete absence of evidence regarding whether *any* of the loan offers were actually honored [makes it] a reasonable inference that the thousands of loan offers were not, in fact, firm offers of credit." (Maj. opn. at p. 12.) But at this stage it was Sosa's burden to produce evidence showing a triable issue, not the lenders. In other words, Sosa must show other similarly situated consumers did not have their offers honored. Sosa, however, produced no evidence the lenders failed to honor other offers. Instead, Sosa relied solely on the number of offers made, an argument which has been rejected by several cases. By requiring the lenders to show it accepted other offers, the majority either mistakenly conflates the burden shifting process or ignores it altogether.

9

*Sosa Failed to Show the Trial Court's Discretionary Discovery Ruling Requires Reversal of the Judgment*

The majority concludes the trial court erred in not ordering the lenders to answer Sosa's special interrogatory asking "how many of the consumers were actually given loans." The trial court found the interrogatory was overbroad and irrelevant. The majority, however, believes the court abused its discretion and thereby prevented Sosa from effectively challenging the summary judgment. (Maj. opn. at p. 11.)[2] I do not agree the court abused its broad discretion and, in any event, I cannot see how the answer to this one interrogatory would have aided Sosa in opposing the merits of the summary judgment motion.

Sosa's burden on appeal is to show the trial court abused its wide discretion in not ordering the lenders to respond to Sosa's interrogatory. (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1186.) To meet that burden, Sosa must show the court lacked any legal justification for its ruling. (See *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1045 ["""""The trial court's determination will be set aside only when it has been demonstrated that there was "no legal justification" for the order""""].) Finally, Sosa must "'show not only that the trial court erred, but also that the error was prejudicial'; i.e., the plaintiff must show that it is reasonably probable the ultimate outcome would have been more favorable to the plaintiff had the trial court not erred in the discovery rulings." (*Ibid.*)

Sosa argues the interrogatory would have allowed her to show "there was a triable issue of fact regarding whether Defendants intended to honor all loan acceptances." She notes a "dismal loan granting rate" would show "the lender never

---

[2]     Again, the majority's analysis is not entirely clear. The majority's conclusion the trial court's discovery ruling prevented Sosa from effectively opposing summary judgment seems to conflict with its conclusion Sosa had in fact presented sufficient information to show a triable issue of material fact.

really intended to grant loans to many or even most of those persons offered the loans." By itself, the proposed interrogatory shows no such thing.

In rejecting a similar argument, a federal appellate court has explained that even if a minimal number of consumers actually obtained a loan, this fact alone does not raise a triable issue on the lender's intent where there is no "breakdown of those who have applied, but did not qualify, or the number of consumers who qualified . . . , but simply elected to choose a different loan offer." (*Cavin v. Home Loan Center* (7th Cir. 2008) 531 F.3d 526, 530 [affirming district court's order granting lender's motion for summary judgment because "[i]n the absence of such evidence and also in light of the limited response to such solicitations, we conclude that the number of consumers obtaining the [loan] does not demonstrate that [defendant's] offer did not comply with the FCRA"].) Accordingly, the trial court did not err in concluding the interrogatory was overbroad and irrelevant because a response would not show the lenders did not make a bona fide offer of credit to Sosa. (See *Perry, supra,* 459 F.3d at pp. 825-826 [affirming district court's order granting summary judgment and its ruling to deny discovery on the percentage of consumers who received credit cards from the lender].) The foregoing case law demonstrates the trial court was legally justified in declining to order a response to Sosa's proposed interrogatory. Moreover, any conceivable error would not have aided Sosa in opposing summary judgment, as explained above.

In sum, the lenders showed they were entitled to summary judgment and Sosa failed to show the existence of a triable issue of fact. Sosa also failed to show the trial court abused its discretion or committed prejudicial error in denying a response to her interrogatory. Because the majority concludes otherwise, I respectfully dissent and would affirm the trial court's order granting summary judgment.


ARONSON, J.


11